**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| CARLOS ANIBAL CORREIA DE PINA,<br><br>Petitioner,<br><br>v.<br><br>ANTONE MONIZ, Superintendent, Plymouth County Correctional Facility; DAVID WESLING, Boston Field Office Director, U.S. Immigration and Customs Enforcement and Removal Operations; TODD LYONS, Acting Director of U.S. Immigration and Customs Enforcement; MARKWAYNE MULLIN, Secretary of Secretary of Homeland Security; U.S. DEPARTMENT OF HOMELAND SECURITY; and TODD BLANCHE, Acting Attorney General of United States,<br><br>Respondents. | Civil Action No. 26-CV-12262-AK |

**MEMORANDUM AND ORDER ON PETITION FOR WRIT OF HABEAS CORPUS**

**ANGEL KELLEY, D.J.**

Before the Court is Petitioner Carlos Anibal Correia De Pina's ("Correia De Pina" or "Petitioner") Amended Petition for Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2241 ("Petition"). [Dkt. 13]. Correia De Pina contends that the bond hearing provided by the immigration court was not constitutionally adequate because the Immigration Judge ("IJ") found him to be a danger to the community based on a single arrest and criminal charge that has not resulted in any conviction; declined to conduct the totality-of-the-circumstances analysis as required by Matter of Guerra, 24 I. & N. Dec. 37 (BIA 2006); disregarded his lack of criminal

history; and failed to consider any alternatives to detention. [See Dkt. 13 ¶¶ 1-2]. Petitioner is seeking his immediate release, or alternatively, a new bond hearing before a different IJ. [Id. ¶ 3]. Respondents oppose, arguing that Petitioner asks this Court to reweigh the evidence or substitute its judgment for that of the IJ; 8 U.S.C. § 1226(e) prohibits judicial review of the Immigration Judge's discretionary bond decision; and Petitioner should first exhaust his administrative remedies by appealing the decision to the Board of Immigration Appeals ("BIA"). [Dkt. 16].

For the following reasons, Correia De Pina's Petition [Dkt. 13] is **GRANTED**.

## I. BACKGROUND

Correia De Pina is a native and citizen of Cape Verde who was admitted to the United States in 2013 as a B-2 nonimmigrant visitor. [See Dkt. 1 ¶¶ 1, 13]. In 2018, he adjusted his status to conditional lawful permanent resident status based on his marriage to a United States citizen. [Dkt. 13. ¶ 14]. Petitioner's status terminated in 2020 based upon his failure to appear at a scheduled interview, and he subsequently divorced. [Id. ¶¶ 16-17]. On April 4, 2025, the Department of Homeland Security ("DHS") issued a Notice to Appear (Form I-862) charging Petitioner with removability under INA § 237(a)(1)(D)(i), 8 U.S.C. § 1227(a)(1)(D)(i), for termination of his conditional resident status. [Id. ¶ 20]. In February 2026, Petitioner filed a Form I-751, Petition to Remove Conditions on Residence, with U.S. Citizenship and Immigration Services ("USCIS"), which remains pending. [Id. ¶ 18].

On or about May 1, 2026, Petitioner was arrested by the Rhode Island State Police Traffic Safety Unit and charged with two misdemeanor offenses: (1) Driving Under the Influence of Liquor (0.08 to 0.10) ("DUI"), first offense; and (2) Operation Under Foreign License During Suspension or Revocation. [Id. ¶ 21]. On or about May 2, 2026, the Rhode Island Sixth Division District court released Petitioner on a $2,000 bond. [Id. ¶ 22; Dkt. 1 ¶ 17]. On or about May 14,

2026, ICE took custody of the Petitioner. [Id. ¶ 23]. Both charges remain pending, and Petitioner has not been convicted of any offense in connection with this incident, nor does he have any other convictions. [Id. ¶ 24].

On June 4, 2026, the Immigration court conducted a custody redetermination hearing. [Id. ¶ 25]. At the hearing, DHS argued that detention was warranted because of dangerousness, relying on the single arrest of Petitioner for DUI and submitting the arresting officer's police report. [Id. ¶¶ 26-27]. Petitioner contested dangerousness, arguing that he has no prior arrests and possesses substantial positive equities, including many years of residence in the United States and pending relief. [Id. ¶ 29]. The IJ orally denied bond, finding that the government met its burden of showing by clear and convincing evidence that Petitioner posed a danger to the community. [Id. ¶ 30]. Petitioner argues, *inter alia*, that the IJ failed to properly assess the reliability of the police report, declined to consider Petitioner's lack of prior criminal history, and failed to consider alternatives to detention. [Id. ¶¶ 31-33].

## II. DISCUSSION

### A. The Court Has Subject Matter Jurisdiction

Respondents argue that 8 U.S.C. § 1226(e) strips the Court of jurisdiction to review the IJ's denial of bond under § 1226(a), and that Petitioner is in substance asking the Court to reweigh the evidence. Petitioner responds that the IJ misapplied the governing law and relied on evidence incapable of supporting her conclusion, thereby violating due process. Petitioner has the better of the argument: because he challenges the legality and constitutionality of the bond hearing itself, § 1226(e) does not bar review.

As this Court observed in Reyes Vargas v. Plymouth Correctional Facility, 2026 WL 1453510, at *3(D. Mass. May 22, 2026), and as other sessions of this District have recognized, a

court may evaluate "whether the IJ adopted a constitutionally and legally adequate process in affording a bond hearing to Petitioner." See also Miti v. Moniz, 827 F. Supp. 3d 206, 211 (D. Mass. 2026) ("District courts retain habeas jurisdiction to ensure that immigration bond hearings are conducted within constitutional bounds."); Dos Reis v. Vitello, 2025 WL 1043434, at *2 (D. Mass. 2025) ("[A] court may intervene where an immigration bail determination is *ultra vires* or facially unconstitutional."); Massingue v. Streeter, No. 3:19-cv-30159-KAR, 2020 WL 1866255, at *4 (D. Mass. Apr. 14, 2020) (holding that district courts may assess whether an IJ's bond hearing complied with constitutionally mandated standards).

Petitioner's claims fall squarely within that scope. He contends that the IJ rested a clear-and-convincing dangerousness finding on hearsay statements in a police report and on charges that have not been adjudicated, and that she never addressed alternatives to detention. He argues that this evidence, as a matter of law, could not support the finding, rendering the decision arbitrary and capricious and violating due process. Those are challenges to the legality and constitutionality of the hearing, not requests to reweigh evidence. Review is therefore not barred by 8 U.S.C. § 1226(e).

**B. Petitioner Need Not Exhaust Administrative Remedies**

Petitioner was not required to exhaust his remedies with the BIA before seeking review of his constitutional due process claims. As the Court explained in Reyes Vargas, Petitioner's liberty interests are at stake, and his detention under 8 U.S.C. § 1226(a) is discretionary and of no fixed duration. Exhaustion is not required in those circumstances.

Exhaustion would also be futile here. Petitioner challenges both the legality of his detention and the constitutional adequacy of the hearing the IJ conducted—questions the BIA lacks authority to adjudicate meaningfully. See Hechavarria v. Whitaker, 358 F. Supp. 3d 227, 238

(W.D.N.Y. 2019) ("[T]he BIA does not have jurisdiction to adjudicate constitutional issues."). And "[a]llowing Petitioner's indefinite detention . . . especially when the legality of Petitioner's detention and process to determine his custody is under challenge, would be a significant harm." Reyes Vargas, 2026 WL 1453510, at *5. Thus, Petitioner need not pursue BIA review before proceeding here.

### C. Standard of Review

The Court's authority to review the IJ's custody determination is "limited." Diaz Ortiz v. Smith, 384 F. Supp. 3d 140, 143 (D. Mass. 2019). The Court may not reweigh the evidence or second-guess the IJ's discretionary judgments. See 8 U.S.C. § 1226(e) ("discretionary judgment[s] regarding the application of [Section 1226] shall not be subject to review."); Diaz-Calderon v. Barr, 535 F. Supp. 3d 669, 676 (E.D. Mich. 2020) ("[A] district court sitting in [] habeas review . . . has no authority to encroach upon an IJ's discretionary weighing of the evidence.") (quoting Arellano v. Sessions, No. 6:18-cv-06625-MAT, 2019 WL 3387210, at *7 (W.D.N.Y. July 26, 2019)); Pensamiento v. McDonald, 315 F. Supp. 3d 684, 688 (D. Mass. 2018) ("Congress has eliminated judicial review of discretionary custody determinations."); Diaz Ortiz, 384 F. Supp. 3d at 144 (court lacks jurisdiction to review "immigration judge's weighing of the evidence and exercise of discretion with respect to dangerousness."). The court must likewise remain "mindful of [its] obligation to afford . . . a degree of deference to the determinations made below." United States v. Tortora, 922 F.2d 880, 882 (1st Cir. 1990).

Within those limits, however, the court may assess whether a bond hearing comported with due process. See Massingue, 2020 WL 1866255, at *4 (weight of authority in this District confirms the court's jurisdiction to determine whether a bond hearing complied with constitutional standards). The inquiry is whether the IJ applied the correct legal standard. A petitioner may show

that the IJ did not by either (1) "point[ing] to the language of the immigration judge's opinion" or (2) "demonstrat[ing] that 'the evidence itself could not — as a matter of law — have supported' the immigration judge's decision to deny bond." Diaz Ortiz, 384 F. Supp. 3d at 143 (quoting Hechavarria, 358 F. Supp. 3d at 240). As to the first route, "[m]erely stating the proper standard does not discharge the obligation to correctly apply the standard." Akinsanya v. Garland, 125 F.4th 287, 297 (1st Cir. 2025). As to the second, a petitioner must show that "under the circumstances, no reasonable immigration judge could have come to" the conclusion the IJ reached. Miti, 827 F. Supp. 3d at 217. Petitioner invokes both routes here, pointing to the IJ's oral decision and to the evidentiary record.

The substantive standards the IJ was obligated to apply are well settled. At an immigration bond hearing in this Circuit, the government bears the burden of establishing that the noncitizen is either (1) dangerous, by clear and convincing evidence, or (2) a flight risk, by a preponderance of the evidence. Hernandez-Lara v. Lyons, 10 F.4th 19, 41 (1st Cir. 2021). In Hernandez-Lara, the First Circuit held that due process places that burden on the government, not the petitioner, in hearings under 8 U.S.C. § 1226(a). Id. at 39.

The determination of dangerousness requires an IJ to consider multiple factors as set out in Matter of Guerra, and thus the IJ's application of dangerousness to Petitioner's facts is reviewable. See Martinez v. Clark, 124 F.4th 775, 783 (9th Cir. 2024) ("[A]pplication of the 'dangerousness' standard . . . [is] a legal standard so long as federal courts 'can assess whether an IJ correctly applied the statutory standard to a given set of facts.'") (quoting Wilkinson v. Garland, 601 U.S. 209, 221 (2024)). Accordingly, the Court reviews the IJ's order to determine if it correctly applied the legal standards.

**D. Petitioner's Bond Hearing Was Constitutionally Deficient**

The record of the bond hearing is thin. No transcript or audio recording was submitted to the Court, and the IJ issued no written decision. According to Petitioner, the IJ denied bond orally, finding that DHS had carried its burden by clear and convincing evidence. [Dkt. 13 ¶ 30]. The IJ's "dangerousness determination relied exclusively on the May 1, 2026 arrest," [Id. ¶ 31], and she denied alternatives to detention "in a single conclusory sentence, without individualized consideration of any specific alternative," [Id. ¶ 33]. Respondents neither contest this account nor supplement it. [See Dkt. 16]. Petitioner further notes that judges of this District have identified at least four recent cases in which the same Immigration Judge denied bond following a constitutionally deficient proceeding, for materially similar reasons. [See Dkt. 13, n.1]; Martinez Aguilar v. McDonald, No. 25-cv-13638-LTS, slip op. at 3 n.3 (D. Mass. June 5, 2026); Palma Aguirre v. Moniz, No. 26-cv-11927-LTS, slip op. at 3 n.1 (D. Mass. May 21, 2026); Rogerio Ramos v. Moniz, No. 26-cv-11388-LTS (D. Mass. Apr. 27, 2026); Mijango Velasco v. Wesling, No. 26-cv-11355-LTS (D. Mass. Apr. 24, 2026).

The IJ articulated the correct standard of proof. The question, then, is whether the evidence she cited was sufficient to justify denying bond on dangerousness grounds. It was not, for two independent reasons.

*First*, the IJ relied on the police report without ever finding it reliable. Contrary to Petitioner's argument, a criminal charge need not ripen into a conviction before an immigration judge may consider a police report's description of the conduct underlying the charge when assessing a noncitizen's dangerousness. See Ganzhi v. Moniz, No. 26-cv-11478-PBS, 2026 WL 1194941, at *1 (D. Mass. May 1, 2026) (collecting cases); Cf. Arias-Minaya v. Holder, 779 F.3d 49, 54 (1st Cir. 2015) ("[I]n reviewing requests for discretionary relief, immigration courts may

consider police reports even when they rest largely on hearsay."). That authority, however, carries a condition: an Immigration Judge may consider such a report only after determining that it is reliable and that its use would not be fundamentally unfair. Id. Nothing in this record shows that the IJ made that determination. She made no finding as to the report's reliability and gave no explanation for crediting it. [Dkt. 13 ¶ 31]. Her reliance on the report was therefore misplaced, and the hearing was deficient on that basis.

*Second*, the IJ failed to consider alternatives to detention. Due process requires consideration of less restrictive alternatives to detention in § 1226(a) bond proceedings. Costa v. McDonald, No. 25-cv-13469-AK, 2026 WL 371198, at *2-3 (D. Mass. Feb. 10, 2026) ("[B]y failing to address less restrictive alternatives to detention, the Government failed to provide Petitioner with constitutionally sufficient procedure."). The record before the Court suggests the IJ never evaluated whether alternatives to detention or other less restrictive means could address any danger Petitioner might pose—despite the fact that the state criminal court that brought the charges had released him on a $2,000 bond. [Dkt. 1 ¶ 17]. Nor did the IJ address the substantial evidence Petitioner offered, including his marriage, his lack of a criminal record, the availability of a sponsor, and the proposed alternatives to detention. [Dkt. 13 ¶ 44]. She instead denied alternatives in a single conclusory sentence, [Dkt. 13 ¶ 33], without analyzing any specific option—electronic monitoring, sobriety conditions, driving restrictions, or conditions addressed to the dangerousness alleged in the underlying DUI arrest. That omission renders the hearing and the resulting bond denial deficient. Mijango Velasco, slip op. at 5-6 ("the IJ's silence as to alternatives rendered the bond hearing constitutionally deficient."). As another judge of this District explained, "[i]n light of the heavy burden on the government to prove dangerousness by clear and convincing evidence, and the immigration court's failure to consider alternative

conditions of release, Petitioner has adequately demonstrated prejudice." Vieira v. Moniz, No. 19-cv-12577-PBS, 2020 WL 488552, at *4 (D. Mass. Jan. 30, 2020).

## III. REMEDY

Having concluded that Petitioner was not afforded a constitutionally adequate bond hearing, the Court turns to remedy. "[T]he essence of habeas corpus is an attack by a person in custody upon the legality of that custody, and . . . the traditional function of the writ is to secure release from illegal custody." Preiser v. Rodriguez, 411 U.S. 475, 484 (1973). Federal courts retain wide discretion in fashioning that relief. See United States v. Torres-Otero, 232 F.3d 24, 30 (1st Cir. 2000) (in the § 2255 context, the "remedy is broad and flexible, and entrusts to the courts the power to fashion an appropriate remedy."); Burnett v. Lampert, 432 F.3d 996, 999 (9th Cir. 2005) ("Federal courts have a fair amount of flexibility in fashioning specific habeas relief."). Where a petitioner does not pose a danger to the community or has been unlawfully determined to be a flight risk, courts regularly order immediate release. See, e.g., Miti, 827 F. Supp. 3d 206; Garcia v. Hyde, 817 F. Supp. 3d 112, 130 (D.R.I. 2025); Soriano v. Hernandez, 830 F. Supp. 3d 1071, 1082 (W.D. Wash. 2026); W.T.M. v. Bondi, 25-CV-02428, 2026 WL 262583, at *5 (W.D. Wash. Jan. 30, 2026); Miri v. Bondi, No. 26-CV-00698, 2026 WL 622302, at *11 (C.D. Cal. Mar. 5, 2026).

The Court's role here has limits. The IJ found Petitioner dangerous by clear and convincing evidence, and the Court may neither reweigh that evidence nor substitute its own judgment for hers. See Diaz Ortiz, 384 F. Supp. 3d at 143; see 8 U.S.C. § 1226(e) ("discretionary judgment[s] regarding the application of [Section 1226] shall not be subject to review."). The defects identified above, however, did not comport with due process. The IJ made no effort in her oral decision to explain, justify, or evaluate whether alternatives to detention or other less

restrictive means could address any danger Petitioner might pose, and she never explained the basis for crediting the police report that supplied the sole foundation for her dangerousness finding.

Upon careful consideration of the record, the Court concludes that the proper remedy is immediate release. The hearing Respondents provided was legally deficient and did not meet the requirements of due process. Petitioner has now been detained for over three months—a detention prolonged by the violation of his due process rights. On this record, there is no basis for his continued detention.

## IV. CONCLUSION

For the foregoing reasons, Correia De Pina's Amended Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2241, [Dkt. 13], is **GRANTED**. The Respondents are **ORDERED** to release the Petitioner immediately.

**SO ORDERED.**

Dated: September 2, 2026

/s/ Angel Kelley
Hon. Angel Kelley
United States District Judge